UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CRIMINAL ACTION NO. 06-74-JBC**

**UNITED STATES OF AMERICA,**                                                                      **PLAINTIFF,**

**V.**                    **MEMORANDUM OPINION AND ORDER**

**LEONARD K. NAVE and**
**WILLIAM F. NAVE, II,**                                                          **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of the defendant, William F. Nave, II, to sever (DE 35). The court, having reviewed the record and being otherwise sufficiently advised, will deny the defendant's motion.

**I. Factual Background**

The defendants in this action, Leonard and William Nave, are charged with offenses arising out of an allegedly fraudulent series of business activities they conducted with assistance from other parties. Leonard Nave is also William Nave's father. In 1997, Leonard Nave and his associates began an oil- and gas-drilling business which was operated through a variety of entities, including Hall and Maher Enterprises, Inc., ("Hall and Maher") and Sterling Energy, Inc. ("Sterling"). Oil- and gas-drilling programs involve the use of money from private investors (who are referred to as limited partners or participants) which is put toward the establishment and operation of a well. In a standard program, the investors purchase shares in the program and are rewarded with royalty checks if it is successful.

According to the Indictment, Leonard Nave sold shares in several oil and gas programs to investors and received payments from these investors in excess of $3,099,984.71. Instead of using these payments to further the programs, Leonard Nave allegedly paid earlier investors with money received from later investors and claimed these payments were royalties from the sale of gas and oil. These purported payments were made to placate the investors and persuade them to participate in additional similar ventures. Thus, this business arrangement was, according to the government, a classic "Ponzi" scheme. The government also claims that, as part of this scheme, Leonard Nave made numerous material misrepresentations in 2001 and 2002 through the use of the United States mail, in violation of 18 U.S.C. § 1341. These allegations form the basis of Counts 1-12 of the indictment, all of which are asserted against Leonard Nave individually.

Count 13, which is asserted against both Leonard and William Nave, relates to the allegedly fraudulent assignment of the proceeds of a loan. In 2001, Leonard Nave arranged for Hall and Maher to lend a sum of money to Dan Chandler, and Chandler signed a note agreeing to repay Hall and Maher. Before any payments were made on the loan by Chandler, however, Hall and Maher was reorganized as Sterling and was subsequently sold to James Palmer in 2003. Chandler died in 2004, and his estate was probated in Woodford County.

According to the government, Leonard Nave wished to collect on Chandler's note from his estate but knew that, if he attempted to recover the loan in the name

of Hall and Maher, creditors of Hall and Maher would find out about the recovery. Thus, he and his associate, John Conley, allegedly concocted a scheme whereby the note signed by Chandler was assigned to the Nave Family Revocable Trust ("Nave Trust"). At all relevant times, William Nave was trustee of the Nave Trust. According to the Indictment, this assignment was fraudulently backdated to 2001 so that Leonard Nave could collect on the note without raising suspicion. This note assignment was filed as a claim against Chandler's estate, and Leonard Nave received $15,000 from the estate as a payment on the note.

The government also claims that, in furtherance of this scheme, William Nave made materially false statements to a postal inspector on two separate occasions in 2005. These purported statements were to the effect that the assignment of Chandler's note from Hall and Maher to the Nave Trust did in fact occur in 2001 and are the subject of Counts 14 and 15, which are asserted against only William Nave. The Indictment also contains a forfeiture count, Count 16, which is asserted against only Leonard Nave.

**II. Legal Analysis**

William Nave has moved the court, pursuant to Fed. R. Crim. P. 8 and 14, to sever Counts 13, 14, and 15, which pertain to him, from the remainder of the indictment, which relates only to his father. Fed. R. Crim. P. 8(b) provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or

3

transactions, constituting an offense or offenses." Under Rule 8(b), defendants who are indicted together ordinarily should be tried together. *United States v. Gardiner*, 463 F.3d 445, 472 (6th Cir. 2006) (citations omitted). However, while it is true that Rule 8(b) should be construed in favor of joinder, it is also true that failure to meet the requirements of this rule constitutes misjoinder as a matter of law. *United States v. Hatcher*, 680 F.2d 438, 440 (6th Cir. 1982).

In this case, William Nave has failed to show that joinder is improper. As the government notes, the alleged note assignment fraud was concocted to recover monies that were originally gained through the alleged Ponzi scheme. More importantly, the note assignment scheme was allegedly perpetrated as an attempt by the Naves and others to conceal Hall and Maher's recovery of the Chandler note because Hall and Maher's involvement would presumably have triggered the attention of those investigating the Ponzi scheme. Thus, according to the government's theory, the note assignment scheme would not have been necessary were it not for the existence of the Ponzi scheme. Since one plan was allegedly crafted only as a result of the other, it follows that the two are intertwined. Finally, society's interest in efficient trials is echoed by the general rule that persons jointly indicted in conspiracies should be tried together, even where certain charges concern individual conspirators only. *United States v. Sivils*, 960 F.2d 587, 595 (6th Cir. 1992) (citing *United States v. Scaife*, 749 F.2d 338, 345 (6th Cir. 1984)). Although William and Leonard Nave's alleged crimes are not perfectly consistent,

there is sufficient overlap between their charges that Rule 8(b) is satisfied.

Even if joinder of defendants is appropriate under Rule 8(b), the court may nonetheless sever defendants' trials if "consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). There is a preference for joint trials in the federal system, and, in order to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever. *United States v. Gardiner*, 463 F.3d 445, 472-73 (6th Cir. 2006) (citations omitted); *see also United States v. Franklin*, 415 F.3d 537, 556 (6th Cir. 2005) ("The severance of a trial of two defendants who were jointly indicted is an extraordinary remedy, employed only to alleviate 'a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'") (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). The fact that a defendant may have a better chance at acquittal if his trial were severed does not require a judge to grant his motion. *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002).

William Nave claims that he would be unduly prejudiced by the presentation of evidence related only to Leonard Nave's Ponzi scheme if a joint trial were held. While it is likely that a great of deal of evidence in a trial of this case would be directed at Leonard Nave alone, any prejudice William Nave may suffer as a result could be controlled by a limiting instruction to the jury. *See United States v. Walls*,

5

293 F.3d 959, 966 (6th Cir. 2002) ("Juries are presumed to be capable of following instructions . . . regarding the sorting of evidence and the separate consideration of multiple defendants."); *Franklin*, 415 F.3d at 556-57 (holding that prejudice had not been shown from a joint trial where the jury was instructed at the beginning and end of the trial of their responsibility to consider each defendant separately and the evidence did not implicate the defendant in the crimes with which the co-defendant alone was charged).  The alleged offenses in this prosecution, although related, are sufficiently discrete that the risk of juror prejudice or confusion is minimal.  The interests of judicial economy also weigh in favor of a joint trial of this case.  As the government points out, evidence of the note assignment scheme may be admissible in a Ponzi scheme trial as Rule 404(b) evidence.  Similarly, evidence of the Ponzi scheme would be relevant in a separate trial based on the note assignment scheme as a possible explanation for the allegedly fraudulent assignment.  Trying Leonard and William Nave separately for their indicted offenses would lead to an unnecessary cumulation of judicial resources.  For the preceding reasons, the court will not order a severance of their trials pursuant to Fed. R. Crim. P. 14.  Accordingly,

    **IT IS ORDERED** that the defendant, William F. Nave, II's, motion to sever (DE 35) is **DENIED**.

Signed on November 22, 2006

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

7